UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00081

ELIZABETH THIES, and
MATTHEW THIES                                                                           Plaintiffs,

v.

LIFE INSURANCE COMPANY
OF NORTH AMERICA                                                                        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Motion to Enforce Settlement Agreement of the Defendant, Life Insurance Company of North America ("LINA"). (Docket No. 23.) Plaintiffs Elizabeth and Matthew Thies have responded, (Docket No. 24), and LINA has replied, (Docket No. 25). This matter is now ripe for adjudication. For the reasons that follow, LINA's Motion is GRANTED.

## BACKGROUND

The issues now before the Court are whether the parties agreed to an enforceable settlement, and if so, exactly what the terms of that settlement are. Because the Court considers simply a question of contract as it relates to the Settlement Agreement, a complete recitation of the litigation's underlying basis is unnecessary. It is sufficient to note that the parties' litigation concerns the accidental death insurance benefits associated with the death of Wade Thies, LINA's insured and the Plaintiffs' father. Plaintiffs seek interest from LINA based upon an alleged delay in paying their claim.

1

On September 10, 2013, in the course of mediation, the parties' counsel executed a handwritten Settlement Agreement. The material terms of settlement as memorialized in that document provide:

> (1) To settle all claims, [Defendant] will pay $400,000.00.
> (2) Each party will bear their own litigation costs/expenses.
> (3) Settlement funds to be paid within 10 days.
> (4) Terms to be confidential, ~~and release to include standard terms.~~
> (5) Defendant to pay mediation costs in exchange for liquidated damages clause.

(Docket No. 23-2.) The parties struck through the portion Provision 4 that provided that the release would include standard terms, apparently because such terms were generally used in long-term disability ("LTD") cases and did not apply here. (Docket No. 23-1 at 4.) Counsel agreed that Plaintiffs would execute a formal settlement agreement incorporating these material terms. (Docket No. 23-1 at 1.)

LINA then drafted a Confidential Release of All Claims. Plaintiffs initially refused to execute this formal settlement agreement, objecting to its provisions regarding confidentiality. However, Plaintiffs ultimately executed two formal settlement agreements, one including LINA's preferred language and the other reflecting their own preferred language. (Docket Nos. 21-3 and 21-4.)

At the crux of the dispute is whether Paragraph 11 of the formal release should include the word "confidential." LINA's draft provides:

> 11. RELEASORS further agree that they will not cause to be made public or release to any news media or the internet, any information obtained from RELEASED PARTIES during the course of the litigation of the Civil Action, including but not

> limited to the contents of the documents produced to them and their counsel by RELEASED PARTIES during the course of the Civil Action or information about the settlement of the terms of this Agreement.

(Docket No. 21-4 at 4.)

Plaintiffs insist that the restrictions should apply only to confidential information, altering Paragraph 11 to read:

> 11. RELEASORS further agree that they will not cause to be made public or release to any news media or the internet, any *confidential* information obtained from RELEASED PARTIES during the course of the litigation of the Civil Action, including but not limited to the contents of the documents produced to them and their counsel by RELEASED PARTIES during the course of the Civil Action or information about the settlement of the terms of this Agreement.

(Docket No. 24 at 5) (emphasis added).

LINA argues that the parties agreed to utilize LINA's standard release language, including provisions related to confidentiality, and struck only the LTD-specific provisions. (Docket No. 23-1 at 4.) The attorneys' long-standing professional relationship provides context to this language, according to LINA; Plaintiffs' counsel, it contends, understood that confidentiality was essential to the settlement agreement. (Docket No. 23-1 at 3.) LINA further insists that Plaintiffs accepted its settlement offer, including the confidentiality language, and can no longer revoke this acceptance. (Docket No. 23-1 at 2.)

Plaintiffs argue that the formal settlement agreement as drafted by LINA violated the parties' understanding, as it reflected the standard terms used in LINA's releases despite the parties' removal of the "standard terms" clause in the handwritten Settlement Agreement. They

further contend that the handwritten Settlement Agreement is enforceable on its face and that no "standard terms" release is required. (Docket No. 24 at 5.)

## DISCUSSION

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976). "[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Indus.*, 103 S.W.3d 99, 105 (Ky. 2003) (quoting *First Commonwealth Bank v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)). However, "[b]efore enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *Re/Max Int'l Inc. v. Realty One, Inc.*, 271 F.3d 633, 645-46 (6th Cir. 2001).[1]

Underlying state law governs the Court's determination of whether the parties reached an agreement on the settlement's material terms. *See, e.g., Glidden Co. v. Kinsella*, 386 F.App'x 535, 540 (6th Cir. 2010). Kentucky law provides that "[s]ettlement agreements are a type of contract and therefore are governed by contract law." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003). Accordingly, a settlement agreement must satisfy the requirements of a

---

[1] Often, a court will conduct an evidentiary hearing to determine whether the parties reached an agreement. However, no hearing is necessary when the parties disagree about the legal meaning of their communications rather than the facts themselves. *See Re/Max*, 271 F.3d. at 646 ("No evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present."). Additionally, neither party has requested an evidentiary hearing. As another district court in this circuit opined, where there is "substantial written documentation of the parties' communications regarding the settlement agreement, the validity and accuracy of which the parties do not dispute, it is unnecessary for the court to conduct to conduct a hearing." *Anglo-Danish Fibre Indus., Ltd. v. Columbian Rope Co.*, No. 01-2133 GV, 2002 WL 1784490 (W.D. Tenn. June 21, 2002). Accordingly, the Court may interpret and enforce the parties' communications without first conducting an evidentiary hearing.

contract to be valid: offer and acceptance, full and complete terms, and consideration. *Cantrell Supply, Inc.*, *v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002).

To enforce the settlement, the Court must conclude that the parties have reached an agreement on all material terms. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (internal citations omitted). If an ambiguity exists, the Court will contemplate "the intent of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written, by evaluating extrinsic evidence as to the parties' intentions." *Frear*, 103 S.W.3d at 105 (internal quotation omitted). If no ambiguity exists, the Court will enforce the contract according to its terms. *Id.*

The Court finds that during the mediation, the parties reached an agreement and formed a valid contract to settle the pending litigation. Their mutual assent was manifested in the handwritten Settlement Agreement, which contained no ambiguity. The intent to more formally memorialize the agreement in the future does not negate the assent that existed at the moment the contract was created. *Jones v. Bank of Harlan*, No. 10-96-GFVT, 2012 WL 115586, at *3 (E.D. Ky. Jan. 12, 2012) at *3; *see also* 1 Williston on Contracts § 4:11 (4th ed. 2011) ("Where it was understood that the contract should be formally drawn up, and put in writing, the transaction is nevertheless complete and binding, absent a positive agreement that it should not be binding until so reduced to writing and formally executed. This is the position adopted by both Restatements.").

As discussed above, the parties agreed to strike the clause specifying that the release would include the standard terms that are generally utilized in LTD, not accidental death, claims.

However, they did not strike the agreement that the settlement's terms would be confidential. To the contrary, the agreement specifically calls for the settlement's terms to be confidential. (*See* Docket No. 21-2.) Plaintiffs admit that the parties "envisioned a more formal release" to follow the handwritten Settlement Agreement. (Docket No. 24 at 7.) They in fact executed two versions of the Confidential Release of All Claims: one including the word "confidential" and one lacking it. Although Plaintiffs may have felt uncomfortable with LINA's settlement terms, they nonetheless agreed to them—including the confidentiality provision—by executing LINA's preferred version of the Release. "A party's mental reservations and unexpressed intentions will not supersede outward expression of assent or override objective and unequivocal manifestations of assent to terms of the settlement agreement. Rather, in deciding whether [a] settlement agreement has been reached, the court looks to the objectively manifested intentions of the parties." *Snowden v. City of Wilmore*, No. 2010-CA-01585-MR, 2013 WL 132543 at *9 (Ky. Ct. App. Jan. 11, 2013) (citing 15B Am. Jur. 2d *Compromise and Settlement* § 7).

The parties formed a valid contract regarding the settlement's material terms. Therefore, Plaintiffs may not now revoke their acceptance. *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (holding that settlement agreements are governed by contract law); *see also Harry Harris, Inc. v. Quality Const. Co. of Benton, Ky., Inc.* 593 S.W.2d 872, 874 (Ky. Ct. App. 1979) (holding that an offer cannot be revoked once accepted). Because the Court agrees that an enforceable settlement was reached, and that its terms exist as argued by LINA, LINA's motion to enforce the settlement will be granted. Accordingly, the formal Release executed by the Plaintiffs that does not include the word "confidential" in Paragraph 11 shall be adopted.

## CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that LINA's Motion to Enforce Settlement, (Docket No. 23), is GRANTED. The parties shall abide by the Confidential Release of All Claims that does not include the modifier "confidential" in Paragraph 11. Plaintiffs tendered an executed version of that Release of All Claims as Exhibit C to their November 18, 2013, Settlement Status Report.

Within seven business days of this Order, Plaintiffs' counsel shall deliver the original, executed version of that Release of All Claims to Defendant's counsel. Upon receipt of that original Release of All Claims, LINA shall provide Plaintiff's counsel with the settlement checks. This case is accordingly DISMISSED as settled.